**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 20-cv-00801-CMA-KMT

DEBORAH YORK,

    Plaintiff,

v.

SAFECO INSURANCE COMPANY OF AMERICA,

    Defendant.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on Defendant Safeco Insurance Company of America's ("Safeco") Motion for Summary Judgment. (Doc. # 28.) Plaintiff opposes the Motion. (Doc. # 34.) For the following reasons, the Motion is granted and summary judgment shall enter in favor of Defendant on all claims.

## I.     BACKGROUND

This matter arises out of a first-party claim for property insurance benefits made by Plaintiff, Deborah York, for damage to her residential property located at 950 Oxford Lane in Colorado Springs, Colorado ("Property").[1]

Plaintiff's Safeco Insurance Policy ("Policy") incepted on July 23, 2018, and

---

[1] The exhibits to Doc. ## 28, 34, and 36 constitute the summary judgment record in this matter for the purposes of this Order. The Court cites to the docket number of the exhibit and the page number of the corresponding party's appendix (e.g., Doc. # 28-1 at 75).

expired on July 23, 2019 ("Policy Period"). (Doc. # 28-1 at 115.) The opening paragraph of the Policy limits its coverage to "losses occurring during the policy period." (*Id.* at 122.) The Policy provides that Safeco will cover "accidental direct physical loss to property described in Building Property We Cover except as limited or excluded." (*Id.*) In defining "BUILDING PROPERTY LOSSES WE DO NOT COVER", the Policy provides the following anti-concurrent causation language:

> We do not cover loss caused directly or indirect by any of the following excluded perils. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.
>
>   6. Wear and tear, marring, scratching, deterioration.

(*Id.* at 122–23.)

Plaintiff signed the closing documents for the Property on July 23, 2018. That afternoon, Plaintiff witnessed a hailstorm at the Property and observed water infiltrate the house. (Doc. # 34-1 at 6, 8.) Plaintiff then left the Property and attempted to stop its transfer on the basis that the sellers had failed to disclose significant latent defects, including mold throughout the house. (*Id.* at 7.) Plaintiff did not return to the Property until December of 2018.

To resolve ownership of the Property, the title company commenced an interpleader action in the District Court for El Paso County, Colorado, captioned *United Title Company LLC. v. Deborah A York,* Case No. 18CV32027 ("State Court Action"). On December 21, 2018, the El Paso District Court confirmed the sale and directed

Unified Title Company LLC to record the General Warranty Deed, which established Plaintiff as the Property's owner.

On that day, Plaintiff brought cross-claims against the seller of the Property and its trustees (together, "Sellers"), claiming the Sellers breached the sales agreement and committed fraud and misrepresentation by failing to disclose latent defects that predated Plaintiff's purchase of the Property. Plaintiff's amended cross-claim alleged that the Sellers failed to disclose that the Property was unfit for habitation because of "catastrophic failures of the windows, stucco and roof which caused mold to infest every interior wall." (Doc. # 28-1 at 15–24.) On May 11, 2020, the state court granted summary judgment in favor of the Sellers on Plaintiff's cross-claims.[2]

In December 2018, following the state court's determination that the Property had successfully transferred to Plaintiff, Plaintiff returned to the Property and retained a contractor to recommend repairs. (Doc. # 34-1 at 9.) On January 2, 2019, Plaintiff submitted an insurance claim to Safeco and reported the Property was damaged by a July 23, 2018 hailstorm. (Doc. # 28-1 at 34–35.) The matter was referred for a special

---

[2] The state court concluded as follows:

> Defendants' evidence establishes that, while the Property did indeed have multiple very significant issues, including issues involving roof and window leaks, stucco problems, and mold infestation, those issues were fully disclosed to Ms. York; she responded by conducting her own inspection through a certified home inspection company and then accepting a reduction in the purchase price and accepting the Property "as is"; and there is no competent evidence that could support a finding of fraudulent misrepresentation, nondisclosure, or concealment.

(Doc. # 36-1 at 252.)

investigation, and Safeco issued a reservation of rights letter to Plaintiff. An inspection was scheduled for the following day. (*Id.*)

During the inspection, Safeco's adjuster, Greg Young, noted there was no hail damage to the exterior of the residence, but there was substantial wear and tear. The drywall under all of the windows had been removed prior to the inspection. Heavy black mold growth was present on the back of some of the removed drywall, which indicated ongoing water infiltration over a substantial length of time. (*Id.* at 34.)

On January 18, 2019, Mr. Young completed his estimate of Plaintiff's loss. He concluded the origin of the loss was wind-driven rain that entered the house "due to wear and tear to old wood windows[.]" (*Id.* at 27.) He identified the damage covered by the Policy to include damage to the drywall below the windows and minor carpet damage. He concluded that the replacement of the windows was excluded under the wear-and-tear exclusion and concluded there was no hail damage. (*Id.* at 27–28.) He issued Plaintiff a payment of $3,274.69, and called Plaintiff and her insurance agent to explain his findings and provide notice that payment had been issued.

A few weeks later, Plaintiff's insurance agent emailed Mr. Young and advised that Plaintiff's roofing contractor, Colorado Commercial Roofing ("CCR"), claimed there was hail damage to the roof and stucco at the Property. A March 15, 2019 proposal for the replacement of the roof was attached to the email. (*Id.* at 26.) Plaintiff requested a re-inspection of the Property, which Mr. Young conducted on April 8, 2019, with two representatives of CCR and one representative of MJB Construction, Plaintiff's general

contractor. Mr. Young reported that there were "no signs of hail damage" and that Steve Barnes of CCR agreed with his finding that Plaintiff's roof was not hail damaged. (*Id.*)

On April 11, 2019, Plaintiff's counsel emailed Mr. Young a letter of representation, which informed Safeco that Plaintiff was moving forward with the repairs to the Property and that she would have several consultants at the Property on April 15, 2019, to document the damage to the roof. (*Id.* at 99.) Among the consultants at the Property on that date was a representative from Shields Engineering Group ("SEG").

On August 29, 2019, Plaintiff's counsel notified Safeco that Plaintiff had completed her remodel of the Property and demanded that Safeco reimburse her for the cost to replace her roof, windows, and exterior stucco. (*Id.* at 101.) On September 25, 2019, Plaintiff submitted to Safeco the May 23, 2019 Roof Evaluation Report by SEG, which identified hail damage to the Property. (*Id.* at 196–209.) The SEG Report stated that the damage was "reportedly" caused by an August 6, 2018 wind and hailstorm. (*Id.* at 197.)

On December 3, 2019, Safeco's management reviewed Plaintiff's claim and determined that the SEG Report provided no new information regarding the condition of the roof and did not substantiate that hail damage occurred within the Policy Period. (*Id.* at 25.) Following its review, Safeco issued a letter to Plaintiff explaining its position and reiterating its prior findings that there was no covered loss to the roof, windows, or exterior stucco. (*Id.* at 104–06.)

On February 20, 2020, Plaintiff initiated this action against Safeco in El Paso County District Court. In her Complaint and Jury Demand, Plaintiff asserts claims

against Defendant for breach of contract, common law bad faith breach of insurance contract, and statutory bad faith breach of insurance contract in violation of Colo. Rev. Stat. §§ 10-3-1115 and -1116. (Doc. # 3.) Safeco filed a Notice of Removal on the basis of diversity jurisdiction on March 24, 2020. (Doc. # 1.)

Safeco filed the instant Motion for Summary Judgment on January 19, 2021. (Doc. # 28.) Therein, Safeco moves for summary judgment on all claims on the grounds that Plaintiff cannot establish she is entitled to coverage under the Policy because (1) Plaintiff's claim is barred by the Policy's anti-concurrent causation provision because it is undisputed that wear and tear contributed to the loss related to the Property's roof, windows, and stucco; and (2) Plaintiff has failed to prove that the claimed losses occurred during the Policy Period. Plaintiff filed a response in opposition to the Motion (Doc. # 34), and Defendant filed a reply (Doc. # 36).

## II.   STANDARD OF REVIEW

Summary judgment is warranted when the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *Turnkey Sols. Corp. v. Hewlett Packard Enter. Co.*, No. 15-cv-01541-CMA-CBS, 2017 WL 3425140, at *2 (D. Colo. Aug. 9, 2017). A fact is "material" if it is essential to the proper disposition of the claim under the relevant substantive law. *Id.* A dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Id.* In reviewing motions for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Id.* However, conclusory statements based merely on conjecture, speculation, or subjective

belief do not constitute competent summary judgment evidence. *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact and entitlement to judgment as a matter of law. *Id.* In attempting to meet this standard, a movant who does not bear the ultimate burden of persuasion at trial does not need to disprove the other party's claim; rather, the movant need simply point out to the Court a lack of evidence for the other party on an essential element of that party's claim. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

Once the movant has met its initial burden, the burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *Id.* Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler*, 144 F.3d at 671. Stated differently, the party must provide "significantly probative evidence" that would support a verdict in her favor. *Jaramillo v. Adams Cty. Sch. Dist. 14*, 680 F.3d 1267, 1269 (10th Cir. 2012). "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id.* "An expert opinion may not be sufficient to overcome summary judgment if 'it is conclusory and thus fails to raise a genuine issue of material fact.'" *Medina v. Cram,*

7

252 F.3d 1124, 1133 (10th Cir. 2001) (quoting *Matthiesen v. Banc One Mortgage Corp.,* 173 F.3d 1242, 1247 (10th Cir. 1999)).

## III.   DISCUSSION

Safeco moves for summary judgment on all claims on the grounds that Plaintiff cannot establish she is entitled to coverage under the Policy because (1) Plaintiff has failed to prove that the claimed losses occurred during the Policy Period, and (2) Plaintiff's claim is barred by the Policy's anti-concurrent causation provision. Herein, the Court addresses causation only, which is dispositive, and finds that Plaintiff has failed to put forth evidence from which a rational jury could find that her claimed losses occurred during the Policy Period. As a result, Safeco is entitled to summary judgment on all claims.

### A.   BREACH OF CONTRACT

The insured has the initial burden to prove her entitlement to recover under the general provisions of the insurance policy. *Rodriguez v. Safeco Insurance Co. of America,* 821 P.2d 849, 853 (Colo. App. 1991). Once the insured demonstrates causation necessary to bring a loss within the limits of a policy's coverage, the insurer bears the burden of proving that a particular loss falls within a policy exclusion. *Colorado Intergovernmental Risk Sharing Agency v. Northfield Ins. Co.*, 207 P.3d 839, 842 (Colo. App. 2008). "Causation can be proved even when we don't know precisely *how* the damage occurred, if there is sufficiently compelling proof that the agent must have caused the damage." *Daubert v. Merrell Dow Pharm.*, 43 F.3d 1311, 1314 (9th Cir. 1995) (emphasis in original). Where a party relies on expert testimony to

determine the most likely cause of an event, an expert "must provide objective reasons for eliminating alternative causes." *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1237 (10th Cir. 2005).

In its Motion for Summary Judgment, Safeco demonstrates that Plaintiff has failed to establish that her claimed losses occurred during the Policy Period. It is undisputed that significant failures of the Property's windows, stucco, and roof predated Plaintiff's purchase of the Property, and that Plaintiff sought damages for those conditions from the Sellers in the State Court Action. After summary judgment entered against her in state court, Plaintiff brought the instant action against Safeco, alleging that damage to the Property's windows, stucco, and roof are attributable to hailstorms that occurred during the Policy Period. Plaintiff initially claimed the losses were caused by a hailstorm on July 23, 2018. She later claimed the Property was also damaged by hail on August 6, 2018, relying on the SEG Report authored by Martin Shields, Professional Engineer. Upon review of the summary judgment record, the Court agrees with Defendant that there is insufficient evidence to link the damage to Plaintiff's roof, windows, and stucco to either the July or August 2018 hailstorms. Therefore, Plaintiff has failed to create a triable issue of fact with respect to causation.

Plaintiff responds that she has put forth sufficient evidence of causation through her own testimony regarding the hail she witnessed at the Property on July 23, 2018, as well as Mr. Shields' purported determination that the date of loss was August 6, 2018. However, neither piece of evidence is sufficient to create a genuine issue of material

fact with respect to causation and, therefore, Plaintiff's entitlement to coverage under the Policy.

First, Plaintiff's lay testimony that she observed a hailstorm at the Property on July 23, 2018, is insufficient to establish that the claimed damage to her roof, windows, or stucco was caused by hail on that date. Plaintiff's expert witness, Mr. Shields, does not attribute the claimed losses to that date. Nor does Plaintiff claim that she personally observed damage caused by hail on that date or shortly thereafter. Indeed, Plaintiff left the Property on July 23, 2018, and did not return until December 2018. Plaintiff does not explain how a reasonable jury could conclude from her limited, lay testimony that the July 23, 2018 hailstorm caused the alleged damage. The Court finds that a reasonable jury could only arrive at that conclusion through impermissible speculation. Therefore, Plaintiff's testimony is insufficient to create a genuine issue of material fact for trial. *See Nesavich v. Auto-Owners Ins. Co.*, No. 16-CV-01493-PAB-STV, 2018 WL 3729513, at *6 (D. Colo. Aug. 6, 2018) (entering summary judgment in favor of the defendant where the evidence would have required a jury to impermissibly speculate that the hailstorm in question caused the alleged damage); *see also M.G. v. Young*, 826 F.3d 1259, 1264 (10th Cir. 2016) (affirming the grant of summary judgment where, based on the evidence in the summary judgment record, a "jury could only" reach its conclusion on an essential element "through impermissible speculation").

Moreover, Plaintiff's indication that Mr. Shields determined in the SEG Report that the date of loss was August 6, 2018, misstates his opinion. Mr. Shields' report states, "[t]he building **reportedly** sustained hail damage as a direct result of hail from

10

the August 6, 2018 storm." (Doc. # 28-1 at 200) (emphasis added). Mr. Shields testified at his deposition that he identified August 6, 2018, as the date of loss because SEG was told by either Plaintiff or John Josetti, a roofing consultant, that the roof was damaged by hail on that date.[3] Mr. Shields did not personally inspect the Property; he reviewed photographs of Plaintiff's roof taken by his assistant. He further testified that he could not determine from the photographs he reviewed when the damage occurred. (*Id.* at 218) (Q: Is there any way you can date when the damage occurred by the photographs taken of the roof? A: Not that I'm aware of.). Therefore, Mr. Shields does not provide evidence that it is "more than mere possibility" that the August 6, 2018 hailstorm caused the alleged damage. *See Bitler*, 400 F.3d at 1237 (where a party relies on expert testimony to determine the most likely cause of an event, the expert "must provide objective reasons for eliminating alternative causes."). Nor does he provide evidence that allows an "inference to the best explanation for the cause," that

---

[3] Mr. Shields testified at his deposition as follows:

> Q: [In your report,] you say "[t]he building reportedly sustained damage as a result of -- result of hail from the August 6th, 2018, storm event." Who told you that the building had been damaged by hail from the August 6th, 2018, storm event?
> A: It was either the Yorks or John.
> Q: Okay. So you believe Ms. York told you that the building was damaged by an August 6th, 2018, storm event?
> A: It was either John or Ms. York. I don't recall.
> Q: Okay. Did they tell you they knew it was – or why they believed it was an August 6th, 2018, event?
> A: I don't recall.
> Q: Did you ever ask them how they -- or why they believed it was an August 6th, 2018, event?
> A: It was a pretty significant storm. I didn't ask them.
> Q: Well -- so you didn't ask them how -- why they believed that storm was the one that caused damage; is that correct?
> A: I don't recall my discussions on that.

(Doc. # 28-1 at 214.)

"eliminate[s] other possible sources as highly improbable," or that "demonstrate[s] that the cause identified is highly probable." *See id.* at 1238; *see also Nesavich*, 2018 WL 3729513, at *6. Viewing Mr. Shields' expert report in conjunction with his deposition testimony, the Court finds that Mr. Shields has provided no factual basis for the conclusion that the claimed losses were caused by a hailstorm on August 6, 2018. Therefore, his testimony and the SEG Report are insufficient to overcome summary judgment. *See Medina,* 252 F.3d at 1133 ("An expert opinion may not be sufficient to overcome summary judgment if it is conclusory and thus fails to raise a genuine issue of material fact.") (internal quotation marks and citation omitted).

Upon review of the record, it is clear that neither Mr. Shields nor Plaintiff have any basis for testifying that the damage to Plaintiff's roof, windows, and stucco occurred during the July or August 2018 hailstorms, as opposed to previous hailstorms that occurred outside of the Policy Period.[4]

Furthermore, Plaintiff admitted in the State Court Action that damage to the Property's roof, windows, and stucco predated her purchase of the residence. Plaintiff claimed that the Sellers did not disclose "the catastrophic failures of the windows, stucco and the roof which caused mold to infest every interior wall[,]" and she sought "costs and expenses to repair defects . . . including but not limited to: replacement of roof, windows, [and] all drywall[.]" (Doc. # 28-1 at 18–19.) The state court found it

---

[4] Plaintiff also states in her Response that MJM Contracting advised that the Property sustained hail damage. However, as with Mr. Shields, the 30(b)(6) representative for MJM Contracting testified as his deposition that there was no way to determine by looking at the stucco when the hail damage may have occurred. (Doc. # 34-1 at 18.)

12

undisputed that two inspection reports provided to Plaintiff before closing identified serious issues with the stucco, windows, and roof; nevertheless, Ms. York agreed to accept title to the Property in an "as is" condition. Safeco has provided evidence that previous owners of the Property submitted a claim for hail damage in 2014. *See* (Doc. # 36-1 at 256–58). Plaintiff has not presented any evidence that distinguishes the damage to the stucco, windows, and roof that predated her purchase of the Property from the damage she claims was caused by hail in July and August of 2018. Therefore, the summary judgment record is devoid of evidence from which a rational jury could conclude that the damage to Plaintiff's residence occurred during the Policy Period.

For the foregoing reasons, the Court concludes that Plaintiff has failed to raise a genuine dispute of material fact with respect to whether her claimed losses fall within the scope of coverage under the Policy. Safeco is entitled to summary judgment on Plaintiff's breach of contract claim. *See Turnkey Sols. Corp.*, 2017 WL 3425140, at *2.

## B.   BAD FAITH BREACH OF INSURANCE CONTRACT

With respect to Plaintiff's common law bad faith claim, "[w]hen an insured sues his or her insurer for bad faith breach of an insurance contract, the insured must prove that (1) the insurer acted unreasonably under the circumstances, and (2) the insurer either knowingly or recklessly disregarded the validity of the insured's claim." *Rabin v. Fid. Nat. Prop. & Cas. Ins. Co.*, 863 F. Supp. 2d 1107, 1114 (D. Colo. 2012). An insurer will be found to have acted in bad faith only if it has intentionally denied, failed to process, or failed to pay a claim without a reasonable basis. *Travelers Ins. Co. v. Savio,* 706 P.2d 1258, 1275 (Colo. 1985).

In order to prevail on Colorado's statutory claim for unreasonable delay or denial of benefits, a plaintiff must establish that (1) insurance benefits were owed, and (2) the defendant delayed or denied payment of those benefits without a reasonable basis. *See* Colo. Rev. Stat. §§ 10-3-1115(1)(a). Accordingly, a plaintiff must prove entitlement to benefits under the policy in order to prevail on a statutory unreasonable delay or denial of benefits claim. *Edge Constr., LLC v. Owners Ins. Co.*, No. 14-CV-00912-MJW, 2015 WL 4035567, at *6 (D. Colo. June 29, 2015), *aff'd sub nom. Sable Cove Condo. Ass'n v. Owners Ins. Co.*, 668 F. App'x 847 (10th Cir. 2016); *see also Walker*, 2017 WL 1386341, at *8.

The Court concludes herein that Plaintiff has failed to establish her losses occurred during the Policy Period and, therefore, has failed to establish her entitlement to coverage under the Policy. As such, Plaintiff cannot succeed on her bad faith claims as a matter of law. *See MarkWest Hydrocarbon, Inc. v. Liberty Mut. Ins. Co.*, 558 F.3d 1184, 1193 (10th Cir. 2009) (noting that it is settled law in Colorado that a bad faith claim must fail if coverage was properly denied); *see also Peterson v. USAA Life Ins. Co.*, 353 F. Supp. 3d 1099, 1112 (D. Colo. 2018) (granting summary judgment in favor of defendant on bad faith claim where denial of coverage was proper as a matter of law), *aff'd,* No. 18-1447, 2020 WL 2609831 (10th Cir. May 22, 2020). It follows that Safeco is entitled to summary judgment on Plaintiff's bad faith claims as well.

## IV.  CONCLUSION

For the foregoing reasons, it is ORDERED as follows:

- Defendant Safeco Insurance Company of America's Motion for Summary

- Judgment (Doc. # 28) is GRANTED;

- summary judgment shall enter in favor of Defendant Safeco Insurance Company of America and against Plaintiff Deborah York;

- Plaintiff's Motion *in Limine* to Exclude Any Reference to the Required Damages Award Under C.R.S. § 10-3-1116(1) From Trial (Doc. # 42) is DENIED AS MOOT;

- Defendant's Objection to Recommendation of United States Magistrate Judge (Doc. # 44) is OVERRULED AS MOOT;

- all settings in this case, including the November 30, 2021 Final Trial Preparation Conference and the Jury Trial set to begin on December 6, 2021, are hereby VACATED; and

- the Clerk of Court is directed to close this case.

DATED: May 19, 2021

                        BY THE COURT:

                        CHRISTINE M. ARGUELLO
                        United States District Judge